### A11A1176. FERRELL v. THE STATE.
(717 SE2d 705)

MIKELL, Judge.

Sonya Ferrell, Michael Clark, and Elizabeth K. Durante were jointly indicted for trafficking in cocaine and possession of a controlled substance, MDMA.[1] Clark and Durante were also indicted for several misdemeanors. Following a jury trial, all defendants were found guilty on all charges. Ferrell appeals the denial of her motion for new trial. Finding no reversible error, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant

---

[1] MDMA, commonly known as "Ecstasy," is an abbreviation for 3, 4-Methylene-dioxymethamphetamine and is a Schedule I controlled substance. See OCGA § 16-13-25 (3) (Z).

is no longer entitled to a presumption of innocence. We neither weigh the evidence nor judge the credibility of the witnesses, but determine only the sufficiency of the evidence in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[2]

"As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[3]

So viewed, the trial evidence shows that Deputy Billy Jones initiated a traffic stop because the driver and passenger of a car were not wearing seatbelts. The vehicle delayed pulling over but finally stopped. Clark was driving, Durante was in the front passenger seat, and Ferrell was in the back seat. Upon speaking with the driver, the deputy smelled a strong odor of marijuana. After questioning, Clark admitted that his driver's license was suspended, and Durante admitted that she had some marijuana in her purse, which was in the center console of the car. The deputy found a plastic bag with six grams of marijuana in Durante's purse, as well as a cell phone. The phone showed a picture of Clark and Durante with the phrase "Mike and Liz" on the top of the photo. The phone contained text messages referencing drugs and drug sales.

A search of the car revealed a Crown Royal bag on the front floorboard at the edge of the seat. Inside this bag were empty baggies, cocaine, and a digital scale commonly used for weighing drugs. The cocaine was packaged in one large bag, weighing 30.7 grams, and 17 individual baggies, weighing 6.4 grams total. The large bag of cocaine was 80.9 percent pure, and the smaller bags were about 60.7 percent pure. Also inside the Crown Royal bag was a pharmacy pill bottle labeled with Ferrell's anti-depressant prescription. The bottle contained two baggies, one holding five pills and the other holding one pill. GBI crime lab tests subsequently confirmed that the pills were MDMA.

1. Ferrell contends that the evidence summarized above was insufficient to sustain her convictions of trafficking in cocaine[4] and possession of MDMA,[5] and that the circumstantial evidence failed to

---

[2] (Citation omitted.) *Martinez v. State*, 303 Ga. App. 71 (1) (692 SE2d 737) (2010).

[3] (Citation and punctuation omitted.) *Navarro v. State*, 293 Ga. App. 329-330 (667 SE2d 125) (2008).

[4] OCGA § 16-13-31 (a) (1) provides that "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine."

[5] OCGA § 16-13-30 (a) makes it "unlawful for any person to purchase, possess, or have under his control any controlled substance." Ferrell's brief mistakenly argues that she was

exclude every other reasonable hypothesis save that of her guilt. We disagree.

Ferrell was not in actual possession of the contraband, nor was she driving or in control of the car. Therefore, no presumption of control over the contraband attaches. "The issue before us is whether [Ferrell] was in joint constructive possession of the drug[s], and the question turns on whether [she] and the other defendants knowingly shared the power and intention to exercise dominion or control over them."[6] A defendant's joint constructive possession of contraband with another will sustain a conviction.[7] Ferrell argues that there was no evidence to show that she possessed the cocaine and MDMA, other than that she was a passenger in the vehicle at the time the drugs were found. Although it is true that "[a] finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity,"[8] the MDMA pills were found in a prescription pill bottle belonging to Ferrell; and the pill bottle was found in the Crown Royal bag with the cocaine. "As long as there is slight evidence of access, power, and intention to exercise control or dominion over [the contraband], the question of fact regarding constructive possession remains within the domain of the trier of fact."[9] Because the state presented evidence beyond Ferrell's mere presence in the car, the issue of her guilt was properly within the jury's discretion.[10]

Ferrell contends that the circumstantial evidence failed to exclude every other reasonable hypothesis save that of her guilt, as required by OCGA § 24-4-6. Her contentions are unavailing. When a constructive possession case "is based wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[11]

As stated above, the evidence at trial showed that some of the contraband found in the Crown Royal bag was inside a prescription pill bottle bearing Ferrell's name. Ferrell testified at trial that the

charged with possession of MDMA with intent to distribute. See OCGA § 16-13-30 (b).

[6] *Vines v. State*, 296 Ga. App. 543, 545 (1) (675 SE2d 260) (2009).

[7] Id. Accord *Edwards v. State*, 306 Ga. App. 713, 716 (703 SE2d 130) (2010).

[8] (Punctuation and footnote omitted.) *Jackson v. State*, 306 Ga. App. 33, 35 (1) (b) (701 SE2d 481) (2010). Accord *Cooper v. State*, 237 Ga. App. 837, 838 (2) (517 SE2d 85) (1999).

[9] (Punctuation and footnote omitted.) *Wright v. State*, 279 Ga. App. 299 (1) (630 SE2d 774) (2006).

[10] See *Cooper*, supra at 838-839 (2) (affirming conviction based on joint constructive possession where small bags of cocaine were found in same container as defendant's prescription pill bottle).

[11] (Citation and punctuation omitted.) *Hodges v. State*, 277 Ga. App. 174 (626 SE2d 133) (2006). See OCGA § 24-4-6.

last time she saw the pill bottle was on the television stand in her home, and she had called the pharmacy to refill her prescription. She testified that although she had asked Clark to pick up the prescription refill from the pharmacy for her, she had not given him the prescription bottle found at the scene and that he would not have needed it to pick up the prescription for her.

"It is the jury's role to resolve evidentiary conflicts, determine witness credibility, and decide the reasonableness of hypotheses based upon the circumstantial evidence."[12]

> Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.[13]

We conclude that the jury was authorized to find that Ferrell had joint constructive possession of cocaine and MDMA under the standard set forth in *Jackson v. Virginia*.[14]

2. Ferrell next argues that pursuant to *Arizona v. Gant*,[15] the search of the vehicle that resulted in the discovery of the cocaine and MDMA was unlawful. However, Ferrell did not file a written motion to suppress, as required by OCGA § 17-5-30 (b), which provides that a motion to suppress illegally seized evidence "shall be in writing and state facts showing that the search and seizure were unlawful." Moreover, Ferrell did not object either to the admission of the cocaine and MDMA at trial or to the deputy's testimony thereon. Therefore, this issue is waived.[16]

Pretermitting whether this issue is properly before this Court, we find that, contrary to Ferrell's contentions, *Gant* did not invalidate the search at issue here, because the officer had reason "to believe the vehicle contain[ed] evidence of the offense of arrest."[17] Thus, the search was authorized under the automobile exception to the warrant requirement.[18] "The automobile exception provides that

---

[12] (Citation omitted.) *Martinez*, supra at 74 (1).

[13] (Citation and punctuation omitted.) *Wright v. State*, 302 Ga. App. 332, 333 (690 SE2d 654) (2010).

[14] Supra.

[15] 556 U. S. 332 (129 SC 1710, 173 LE2d 485) (2009).

[16] *Nelson v. State*, 305 Ga. App. 65, 66 (1) (699 SE2d 66) (2010).

[17] *Gant*, supra, 129 SC at 1723 (VI).

[18] See id. at 1719 (III).

a police officer may search a car without a warrant if he has probable cause to believe that the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant."[19] Probable cause exists when

> the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent man to believe that the contents of the vehicle offend the law. Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction.[20]

Additionally, the officer can search the entire vehicle, "including all containers and packages that may contain such contraband."[21]

In the case sub judice, the objective facts known to Deputy Jones after he lawfully stopped the car gave him probable cause to believe that the car contained contraband. These facts included the fact that the driver did not slow down immediately after the officer initiated the traffic stop; the smell of marijuana in the car; and the fact that Durante admitted to having marijuana in her purse. Thus, it was reasonable for the police officer to believe that there was evidence of contraband in the vehicle,[22] and the warrantless search of the vehicle was therefore lawful.

3. Ferrell next argues that she was denied her Sixth Amendment right to confrontation when text messages from Durante's cell phone were admitted into evidence. However, Ferrell did not object on confrontation grounds to the admission of the evidence. Accordingly, this issue is waived.[23]

4. During cross-examination, Ferrell's counsel asked Investigator Shannon Ryals if he had interviewed any of the defendants himself on the evening of the arrests. He responded, "Yes ma'am. . . . I tried to interview each one. First I *Mirandized* them. As soon as I *Mirandized* them, they invoked their right to remain silent." Ferrell claims that this testimony improperly commented on her Fifth Amendment right to remain silent. However, Ferrell cannot complain about this testimony because the comment was elicited by

---

[19] (Citations and punctuation omitted.) *Martinez v. State*, 303 Ga. App. 166, 170 (2) (692 SE2d 766) (2010).

[20] (Citation omitted.) Id. at 170-171 (2).

[21] (Punctuation and footnote omitted.) *Brown v. State*, 311 Ga. App. 405, 408 (2) (715 SE2d 802) (2011).

[22] See *Higdon v. State*, 261 Ga. App. 729, 733 (a) (583 SE2d 556) (2003) ("a police officer may draw inferences based on his own experience in deciding whether probable cause exists") (footnote omitted).

[23] *Higginbotham v. State*, 287 Ga. 187, 189 (3) (695 SE2d 210) (2010).

defense counsel.[24]

5. Ferrell contends that her right of confrontation was violated by inadmissible hearsay testimony by Lawrence Sullivan, the testifying GBI chemist, regarding another chemist's testing of the drugs. We disagree.

Sullivan testified at trial because Shelly Davis, the analyst who tested the drugs, was no longer with the GBI. Ferrell argues that this testimony was inadmissible hearsay, but the record does not support this argument. Rather than being a mere conduit for Davis's findings, Sullivan testified that he reviewed the examination, notes, and materials created by Davis during her analysis of the substances, and based on that, his expert opinion was that the solid material was positive for cocaine and the tablets were positive for MDMA. "An expert may base [his] opinions on data gathered by others."[25] Accordingly, Sullivan's testimony was properly admitted into evidence.[26]

6. Ferrell contends that the trial court issued a jury instruction on impeachment that was not authorized by the evidence presented at trial. We disagree.

Initially, the trial court charged the jury:

A witness may be impeached, in the case, by . . . disproving the facts to which the witness testified; secondly, by proof that the witness has been convicted of a felony in this state, and you can also impeach a witness by proof of contradictory statements previously made by that witness about matters that are relevant to the witness's testimony in this case.

After the jury left the courtroom, the trial court asked for exceptions to the charge. Co-defendant Clark objected to the inclusion of the portion regarding a felony conviction, and it was revealed that the impeachment charge was requested by Durante. The trial court agreed to recharge on impeachment. When the trial court asked Ferrell for any exceptions, she stated:

If the Court is inclined to give the full charge again on impeachment, Judge, I will say that the impeachment involving a felony [does] not apply, neither does proof of the crime involving dishonesty or making false statements,

[24] *Heath v. State*, 291 Ga. App. 594, 595 (2) (662 SE2d 362) (2008).

[25] (Citation omitted.) *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009).

[26] See *Carolina v. State*, 302 Ga. App. 40, 41-42 (690 SE2d 435) (2010).

neither does that of proof of reputation for untruthfulness. None of those apply.

When the court asked if disproving the facts about which the witness testified and proof of contradictory statements previously made by a witness applied, Ferrell agreed that they did. The trial court re-charged the jury on impeachment and limited it to those two methods. After all the jury charges were issued, Ferrell objected that "recharging [the jury] puts undue burdensome [sic] on that charge."

Ferrell argues that because she was the only defendant to testify at trial, the jury charge intimated that her testimony regarding how the prescription pill bottle containing MDMA could have gotten into the cloth bag holding the other contraband was susceptible to impeachment. However, Ferrell agreed that the content of the re-charge given by the trial court was appropriate. Therefore, this issue is not preserved for our appellate review.[27]

We also note that, contrary to Ferrell's assertions, the charge was tailored to the following evidence presented at trial: during cross-examination, Deputy Jones was confronted with discrepancies between his trial testimony and the report he prepared at the time of the incident; Investigator Ryals was confronted with what he categorized as a typographical error in chain of custody paperwork; and Ferrell testified that she left her pill bottle on the television stand, but it was found in the car.[28] Thus, the trial court did not err in giving the jury the instruction at issue.

7. The cellular phone containing text messages was admitted to show that the phone was used to facilitate drug trafficking. The trial court declined to allow the cell phone to go out with the jury during deliberations. When the jury asked to have the cell phone while they deliberated, the trial court informed them that "[t]here are other things on that cell phone which are not admitted into evidence. They have no relevancy to this case to that extent — and to some extent may be prejudicial to the parties involved." Ferrell contends that the trial court expressed an impermissible opinion, in violation of OCGA § 17-8-57.[29] We disagree.

The state argues that, because Ferrell failed to object to this comment during trial, she has waived any error. However, our

---

[27] One cannot invite error and then seek to have a conviction reversed on that basis. *Thompson v. State*, 286 Ga. 891, 892 (2) (692 SE2d 384) (2010).

[28] See *Brogdon v. State*, 270 Ga. App. 568, 569 (2) (607 SE2d 199) (2004) ("The instructions in a criminal trial should be tailored to the indictment and adjusted to the evidence admitted in court") (citation and punctuation omitted).

[29] OCGA § 17-8-57 provides that "[i]t is error for any judge in any criminal case . . . to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

Supreme Court has "clarified that a violation of OCGA § 17-8-57 will always constitute 'plain error,' meaning that the failure to object at trial will not waive the issue on appeal. On appeal, the issue is simply whether there was such a violation."[30] Therefore, we address Ferrell's contention, and we find that there has been no violation of OCGA § 17-8-57 in this case. In denying the jurors' request, the trial court was merely instructing jurors that only the admitted portions of the cell phone's contents were available for their consideration. Because the court's comment was "limited to a clarification of procedures and did not address the credibility of witnesses or any fact at issue in the trial,"[31] it does not constitute a basis for reversal.

8. In her final enumeration, Ferrell claims that the trial court erred in finding that she received effective assistance of counsel in several respects: (a) by eliciting testimony from a narcotics investigator that Ferrell invoked her right to remain silent; (b) by failing to object to the admission of text messages; (c) by failing to file a motion to suppress the evidence of drug contraband; (d) by failing to object to the GBI chemist's testimony; and (e) by failing to object to the trial court's jury charge on impeachment. We disagree.

In order to prevail on a claim of ineffective assistance, Ferrell must show "both that counsel was deficient and that, but for the unprofessional errors, there is a reasonable probability that the trial's outcome would have been different."[32] In reviewing a trial court's ruling on a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; and we review de novo the trial court's legal conclusions.[33]

(a) Ferrell first argues that her trial counsel rendered ineffective assistance by eliciting testimony from a narcotics investigator that Ferrell had invoked her right to remain silent. During cross-examination, Ferrell's counsel asked the investigator if he interviewed any of the defendants on the evening of the arrest, and the investigator replied that he could not interview the defendants because they had invoked their *Miranda* rights. However, the transcript of the hearing on appellant's motion for new trial reveals that counsel's questioning was tactical in nature. Counsel testified that she hoped this question would elicit inconsistent testimony from the investigator. Whether this tactic was "wise or unwise has no bearing on appellant's claim of ineffectiveness, as counsel's tactical

---

[30] (Citation omitted.) *Linson v. State*, 287 Ga. 881, 883 (2) (700 SE2d 394) (2010).

[31] (Citations omitted.) Id. at 884.

[32] (Footnote omitted.) *Lewis v. State*, 279 Ga. 69, 75 (9) (608 SE2d 602) (2005).

[33] *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

decisions will not be judged in hindsight."[34]

(b) Ferrell argues that her trial counsel rendered ineffective assistance by failing to object to the admission of text messages on the cell phone owned by co-defendant Durante. At the motion for new trial hearing, Ferrell's trial counsel testified that she did not object to the admission of these text messages as a matter of trial strategy because she believed they supported Ferrell's defense. Counsel reasoned that because there was no evidence connecting Ferrell to the cell phone, it would be beneficial for Ferrell's defense to allow the text messages into evidence. A failure to object to the introduction of evidence that does not significantly prejudice the defendant does not constitute ineffective assistance of counsel, particularly if there is a tactical reason not to object.[35]

(c) Ferrell also contends that her trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence of drug contraband; by failing to object to the GBI chemist's testimony; and by failing to object to the trial court's jury charge on impeachment. However, these claims of error depend on enumerations of error unsuccessfully asserted in this opinion,[36] and "failure to make a meritless objection cannot be evidence of ineffective assistance."[37]

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED OCTOBER 18, 2011.

*Peter D. Johnson*, for appellant.
*R. Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.

---

[34] (Footnote omitted.) *Lewis*, supra at 76 (9).
[35] *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).
[36] See Divisions 2, 5 and 6 above.
[37] (Footnote omitted.) *Scott v. State*, 254 Ga. App. 728, 731 (4) (a) (563 SE2d 554) (2002).